MORSE, Plaintiff in Error, v. KIMBALL et al.

Division One, February 5, 1900.

1. **Bill of Exceptions:** DISAGREEMENT OF ATTORNEYS. It is the duty of the trial court, where attorneys can not agree upon the bill of exceptions, to find what the evidence was on the trial, and its finding is final and conclusive, and if the court must take evidence to ascertain what the evidence was at the trial, its findings should be set out in the proper place in the bill, and the evidence on which the finding is based should not be attached to the bill as a part thereof.

2. **Contract:** VARIED BY SUBSEQUENT MEMORANDUM. A complete contract can not be varied by a subsequent memorandum of one of the parties stating how much the other owes him thereunder, nor is the amount of the debt lessened by such memorandum.

3. **Decree of Title:** LIEN. The court can not decree title in plaintiff if the evidence shows that defendant has a lien on the land.

Morse v. Kimball.

Error to Jackson Circuit Court.—*Hon. E. L. Scarritt*, Judge.

AFFIRMED.

*Charles H. Nearing* for plaintiff in error.

(1)   That the judgment must conform to the pleading is self-evident and clearly established. Fithian v. Monks, 43 Mo. 502; Black on Judg., sec. 242; Freeman on Judg., sec. 121; Clemons v. Helihan, 72 N. W. Rep. 270; Ashbrook v. Roberts, 59 Cal. 97; Lipp v. Hasback, 12 Neb. 371.   (2) Bagley, by his own acts, is estopped from claiming a lien on the interest in the property purchased by complainant. Skinner v. Strouse, 4 Mo. 93; Rice v. Bunce, 49 Mo. 231; Huntricker v. Clark, 12 Mo. 333; Guffog v. O'Reilly, 88 Mo. 418.   (3) Bagley accepted the benefits of the sale to Morse, and after receiving the same can not deny complainant's right.   Equity will certainly not let him keep the money and maintain his prior lien.   Austin v. Loring, 63 Mo. 19.

*Fred W. Perkins* for defendants in error.

(1)   The judgment conforms to the pleadings and is within the issues presented by them.   (2)   It conforms to the evidence and is warranted by it.   The decree is fully warranted by the evidence, and error, if any, is harmless, and does not materially affect the merits of this action, and under our statute should not be reversed.   R. S. 1889, sec. 2303; Finkelnburg's App. Prac. (Ed. 1894), p. 93, and cases cited.

BRACE, P. J.—This is an action in equity, in which the plaintiff seeks to divest the defendant Bagley of the legal title to an undivided sixth of a parcel of land situate in Jackson county, particularly described in the petition and answer of defendant Bagley, and to have the same vested in the plaintiff, on the ground that the said Bagley on the —— day of

Morse v. Kimball.

———, 1887, held the legal title to an undivided third of said real estate in trust for defendant J. Niles Kimball, and that the plaintiff on that day purchased one-half of the said interest of said Kimball in said real estate for the sum of $2,566.66, and since has paid the full amount of the purchase price therefor.

The answer of the defendant Kimball is a general denial.

The answer of the defendant Bagley, in addition to a general denial, is as follows:

"That on or about May 9, 1887, Henry J. Gorin, George N. Byers, J. Niles Kimball, who is one of the defendants herein, and this defendant, V. W. Bagley, formed a syndicate to purchase of one William H. Town the following described real estate situated in Jackson county, Missouri, to wit: The north one hundred and fifty-nine feet (subject to the right of way of Sixth street over the north thirty feet thereof) of the following described tract of land; beginning at the southeast corner of Long, Croysdale & Vaughan's subdivision of Woodland, as it is marked and designated on the recorded plat of said subdivision, running thence east and parallel with the center line of Independence avenue four hundred and forty feet; thence north and parallel with the east line of said subdivision three hundred and thirty feet; thence west and parallel with the center line of Independence avenue four hundred and forty feet to the east line of said subdivision; thence south with the east line of said subdivision three hundred and thirty feet to the place of beginning. That it was agreed that the title thereto should be taken in the name of, and held by this defendant, for and in behalf of all the members of said syndicate according to their respective interests, upon the terms and conditions to be set forth in the declaration of trust to be by him executed; that said Byers and Gorin, jointly, were to have one share, and the said Kimball and this defendant Bagley each one share; that the purchase price of said land was $15,400, of which $5,134 was to be paid in cash, and the

balance of $10,266 to be paid $5,133 in one year and $5,133 in two years, the deferred payments to be evidenced by sixteen notes signed by this defendant, eight being for $533.25 each, and eight for $750 each, and all secured upon said land; that the representative of each third interest was to pay one-third of the cash payment and assume payment of one-third of the deferred payments. That on or about May 9, 1887, in accordance with said agreement, the said Bagley made the said cash payment of $5,134 to said William H. Town, and executed and delivered his sixteen notes for the deferred payments as aforesaid, and thereupon the said William H. Town made, executed and delivered to this defendant, his warranty deed for said property; that said Gorin and Byers paid to this defendant their third part of the cash payment, and this defendant then made, executed, and delivered to said Gorin, as agreed upon by them, his declaration of trust for their interest. That afterwards, as the deferred payments fell due, they, the said Gorin and Byers, paid their part thereof, so that their third interest became and was wholly paid for; that thereupon, on July 27, 1889, they, the said Gorin and Byers, assigned to this defendant their interest in said deed of trust and surrendered to him the declaration of trust so issued to said Gorin as aforesaid with instructions and authority to execute and deliver a declaration to said Gorin and John W. Byers for an undivided one-third interest in said lands, the interest of said Byers being four-fifths of one-third, that of said Gorin one-fourth of one-third, and showing their respective interests to be all paid for; and thereupon this defendant executed and delivered his declaration in accordance with their said request. That this defendant made the cash payment for his interest at the time of the purchase aforesaid, and has since paid his part of the several deferred payments; that, as between the members of said syndicate, he owes nothing on account of said purchase. That at the time this defendant executed his declaration of trust to said Gorin, he also made

one in like tenor and effect in favor of the defendant, J. Niles
Kimball, for a third interest in said land; said last declaration
recites that said Kimball has paid to said Bagley the sum of
$1,711.34, but said Kimball did not pay said amount, or any
part thereof, and, by agreement of the parties to said declara-
tion, and for his protection, said Bagley retained possession of
said declaration; that said Bagley never has delivered said
declaration to said Kimball; that said Kimball afterwards paid
his part of the first one of the two deferred payments, and
$911.34 on account of his part of the last deferred payment,
and 8 per cent interest on the amount of the cash payment
aforesaid to November 25, 1890, but no more; that long after
such payment by said Kimball, to wit, on the — day of——
1893, said Kimball came to this defendant and borrowed
said declaration of trust, and has not yet returned the same,
and so it can not be attached hereto as a part hereof; this
defendant is informed and believes that said declaration is
now in the possession of plaintiff. It was understood and
agreed by and between said Kimball and Bagley that, as the
said Bagley had the title to said property in his name, he
should be and was amply secured for the money he paid on
account of the cash payment of said Kimball. That there is
still due and unpaid, on account of the last payment of the
purchase price of said syndicate property, a balance of $800,
and interest thereon from May 9th, 1892, at the rate of
8 per cent per annum, and which indebtedness is held by
one A. A. Hilton; that this is secured upon the interest of all
the parties to said syndicate, but as all the parties excepting
said Kimball have paid for their interest in full, said amount,
as between the members of said syndicate, should be a lien
upon only the third interest of said Kimball.

"Defendant further answering says, that as the taxes
became due upon said property, he paid the same, and then
looked to the other parties in interest for reimbursement ac-
cording to their respective interests; that said Gorin and

Byers repaid him their share so advanced, but said Kimball has failed and neglected to pay his; that the amounts so advanced by said Bagley upon said Kimball's third interest, and the dates of payment by him, are as follows:   January 2, 1894, state and county taxes for 1893, $9; May, 1894, city taxes for 1894, $7.84.

"Defendant further says that if said Kimball sold any part of his interest in said trust, he did not make an assignment or conveyance thereof in writing, as required by the statute in such case.

"Wherefore this defendant prays that, as between the parties to this suit, the said balance of $800 and interest from May 9, 1892, at the rate of 8 per cent per annum, so due on account of the original purchase price of said syndicate property as aforesaid, may be adjudged and decreed to be a lien on only the undivided one-third interest of said Kimball in the land aforesaid, and not upon the interest of this defendant; and that the several amounts paid by this defendant on account of said Kimball's third interest as aforesaid, to wit, $1,711.34, said Kimball's cash payment, and interest thereon from November 25, 1890, at eight per cent per annum, and $9 advanced for state and county taxes for 1894, on January 2, 1894, with interest from that date and $7.84 advanced for city taxes for 1894 in May, 1894, with interest from that date, may be adjudged and decree to be a lien and a charge upon the third interest aforesaid, of the said Kimball, subject only to the lien of the $800 aforesaid, balance of the original purchase price, and for such other and further relief as this defendant may in all good conscience be entitled to in the premises."

Upon which, issue was joined by reply.

The declaration of trust referred to in the answer, is as follows:

"Whereas, William H. Town of the county of Jackson, State of Missouri, did by a certain warranty deed dated the

ninth day of May, 1897, convey to V. W. Bagley, of the county of Jackson, State of Missouri, the following described real estate, situated in the county of Jackson, State of Missouri, to wit: (description same as in answer of Bagley.) And whereas J. Niles Kimball has paid to said V. W. Bagley the sum of seventeen hundred and eleven and 44-100 dollars in money, the receipt whereof is hereby acknowledged, and has assumed the payment of $3,422 and interest thereon of the incumbrance now upon said real estate, the assumption of which part of said incumbrance is hereby acknowledged by the acceptance of this instrument, such payment and assumption being in full of the purchase price of an undivided one-third interest in said real estate. And whereas, the title to said real estate is to remain in said V. W. Bagley in trust for the following purposes, to wit: Said real estate is to be sold by said V. W. Bagley at and for the highest price and on the best terms and conditions of payment possible and after the deduction and payment of the usual commissions, if any, and the necessary expense of the sale of said premises the said V. W. Bagley agrees to account for and pay over to said J. Niles Kimball one-third of the net proceeds of said sale, and to pay over to said J. Niles Kimball one-third of the net income, rents, revenues, issues or profits arising from the use or occupancy of said premises. Now, therefore, the said V. W. Bagley in consideration of the premises and the sum of one dollar to said V. W. Bagley in hand paid, the receipt of which is hereby acknowledged, does hereby declare that said V. W. Bagley holds the title to an undivided one-third interest in the real estate hereinbefore described in trust for the use and benefit of said J. Niles Kimball.

"In testimony whereof, the said V. W. Bagley has hereunto set his hand and official seal, this 23d day of June, A. D. 1887," etc.

The court, after hearing the evidence, made and entered the following finding and decree: "The court......doth find that the real estate described in plaintiff's petition and

defendant Bagley's separate answer, . . . . . . was purchased by defendants J. Niles Kimball and V. W. Bagley together with H. J. Gorin and George H. Byers, and by agreement the title thereto was on May 9, 1887, taken in the name of defendant Bagley in trust for said parties; that the purchase price was $15,400, of which $5,134 was paid in cash and the balance $10,266 divided into two equal payments of $5,133 each, due in one and two years from said date. That said deferred payments were evidenced by sixteen notes signed by defendant Bagley, eight for $533.25, and eight for $750 each, and all secured upon said land. That said Kimball and Bagley each owned one-third and said Gorin and Byers jointly one-third, that the representation of each third interest was to pay one-third of the cash payment and assume payment of one-third of the deferred payments. That as between the parties to said trust the one-third interest of said Gorin and Byers and one-third interest of said defendant Bagley became and were wholly paid for. That of the original purchase price there yet remains unpaid $800 and interest thereon from May 9, 1892, at the rate of eight per cent per annum, which is secured by a deed of trust on part of said property. That said defendant Bagley made various advances for defendant Kimball on account of said Kimball's original cash payment and interest and taxes accruing against said Kimball's third interest; that the original cost of said Kimball's third interest was $5,133.34, that in addition to said amount there have been advances made by said defendant Bagley, trustee, on account of said Kimball's third interest, with interest on such amounts as were not shortly repaid at the rate of six per cent per annum to the date of this decree amounting to $1,112.81, making the total amount due by said Kimball on account of this third interest $6,246.15. The court further finds that there has been paid at different times towards the cost of said Kimball's third interest amounts aggregating $3,195.19, leaving a balance due and unpaid on account of said Kimball's one-third

interest of $3,050.96; that of the amount of this balance due on said Kimball's interest $800 is the balance of the original purchase price yet remaining unpaid and secured upon the interest of all the members of said trust. That the difference between the amounts now due on account of said Kimball's third interest of $3,050.96 and the balance of the original purchase price remaining unpaid of $800 is $2,250.96, and that said amount of $2,250.96 so due on account of said Kimball's share is the amount of advancements with six per cent interest made by and due to said defendant Bagley, as aforesaid. The court further finds that the plaintiff, Charles H. Morse, has advanced to defendant, Kimball, towards the purchase of a one-half interest of said Kimball's one-third interest, sums aggregating with interest to this date $3,863.64. The court doth thereupon order, adjudge and decree, first that as between the parties to this action, the said balance of $800 and interest thereon from May 9, 1892, at the rate of eight per cent per annum, so remaining unpaid, as aforesaid as part of the original purchase price of said property, and secured upon the joint interest of all the parties to said trust be and hereby is a lien upon only one-third interest of the defendant J. Niles Kimball on said land, and as between said parties the interest of all other parties to said trust is relieved from any liability on account of said balance; second, that the amount so found to be due V. W. Bagley, trustee, of $2,250.96 for advancements made by him, as aforesaid, on account of said Kimball's one-third interest together with six per cent interest per annum from the date of this judgment be and hereby is declared a lien on said Kimball's one-third interest, subject only to rights of the holders of said $800 incumbrance remaining unpaid on account of the original purchase price and interest thereon; and, third, that the amounts and interest thereon at six per cent aggregating $3,863.64 advanced by the plaintiff to defendant Kimball, with interest at the rate of six per cent per annum from date hereof be and hereby are declared a lien upon one-third in-

terest of said Kimball in said property. It is further ordered, adjudged and decreed that the costs of this suit be paid out of said trust estate and that in making settlements with the bene-ficiaries in said trust, the trustee be credited with a payment made by him on account of said costs, by attorney."

In due time on the 18th of April, 1896, plaintiff filed his motion for new trial, which being overruled, time was given him to file his bill of exceptions, which leave was renewed from time to time, during which on the 5th of May, 1897, the plaintiff filed a motion asking the court to settle the bill of exceptions, alleging that the attorneys were unable to agree upon the same. This motion coming on to be heard on the 3d of July, 1897, on the statements of counsel, affidavits of the parties and other evidence, the court made the following finding and order: "Now, on this day the motion of plaintiff to settle the bill of exceptions on account of lost exhibits coming on to be heard, the same is submitted to the court and the evidence and arguments of counsel heard, and the court having duly considered the same, finds that upon the making up of the bill of exceptions herein it was ascertained that five of the defendants' exhibits, introduced in evidence, were lost or mislaid; that one of them being a statement of the amounts paid by defendant J. Niles Kimball upon the property in controversy has been found by the plaintiff's counsel among the papers in his office, and it is hereby ordered that the same be incorporated in the bill of exceptions. Another one of said exhibits was the declaration of trust from defendant Bagley to J. Niles Kimball which was an exact copy of the one from Bagley to Gorin and Byers introduced in evidence on this motion; it is therefore ordered that said declaration of trust be incorporated into the bill of exceptions, except that the name of J. Niles Kimball shall be substituted for the name of Gorin & Byers. The other three exhibits were letters, one from plaintiff Morse to defendant Bagley, the tenor and purport of which was that said Morse would accept from Bagley a

declaration of trust for Kimball's one third interest in the property in controversy subject to all the incumbrances thereon including a lien for the advancements made by Bagley.   It is therefore ordered that the tenor and purport of said letter as herein found and stated shall be incorporated into and as a part of said bill of exceptions.   The other two letters were from Morse to defendant Kimball, the tenor and purport of which were that the defendant Kimball had mistreated him, the plaintiff, by not disclosing fully his financial condition.   But in neither of said letters did said Morse claim that he had purchased any interest in said property. It is therefore ordered that the tenor and purport of said letters be incorporated into and made a part of the bill of exceptions. It is further ordered that all the evidence introduced upon this motion, and this finding and judgment of the court, be incorporated into and made a part of the bill of exceptions herein.   To which finding of the court the plaintiff excepted at the time."

Thereupon, this finding and order and the evidence upon which it was based, seem to have been attached to a bill of exceptions previously prepared some time in 1896, and the same thus supplemented, signed as the bill of exceptions and made a part of the record in the case.   Upon the record thus made up, the plaintiff brings the case here by writ of error, and files a complete transcript of the record properly certified.

(1)   It was the duty of the trial court to settle the bill of exceptions and to sign the same after it had been made to conform to its ruling upon that subject, and it is no part of our duty to review the evidence upon which it predicated its action in that behalf.   The finding of that court as to what the evidence on the trial, in fact was, was final and conclusive, and that evidence as thus found should have been embodied in the bill in its proper place before the same was signed, and the record should not have been incumbered with the proceedings on the motion, and the necessity of patching up the original bill with the supplement devolved upon this court.   A proper

abstract of the transcript, even in its present form, might have assisted us as to a more ready comprehension of the facts in the case, but the abstract is nothing more than a transcript in narrative form of the certified transcript commencing with the pleadings. We have, however, at considerable expense of time and labor, gone through all the evidence in this disjointed bill, as best we could, and have no hesitation in concluding that the finding of the court as to the ultimate facts of the case, carried into the decree, is sustained by the weight of the evidence and that the amounts decreed to be a lien upon the one-third interest of Kimball are within the issue of the pleadings, although the mode of calculation by which the result was reached, may have been different from that therein suggested.

(2)   It is contended, however, for the plaintiff, in this connection, that the court ought to have held that the defendant Bagley was estopped from having those amounts so charged.   The only evidence upon which this contention hangs is an extract from a memorandum sent by defendant Kimball to plaintiff Morse, which the evidence tended to prove was part in the handwriting of the defendant Bagley, and part in the handwriting of Kimball.   The evidence tends to prove that the memorandum was in pencil on one of Kimball's letter head sheets, and sent in a letter from Kimball to Morse, dated April 27, 1888, which is as follows:

"Kansas City, Mo., June 8th, 1888.
"Dear Brother Charlie:

"Your letter of the 5th at hand.   I was somewhat disappointed that you did not succeed in getting the money you expected to.   I have had a talk with Bagley and he says the way to do under the circumstances is for you to make a note for the amount payable here at one of the banks, and we get it discounted, and take up the other note that we gave for a few days, which is on demand, and Bagley has been putting them off from day to day with the idea that the money would be ready in a few days.   Now you want to take the amount that

Fannie carried to you that was all figured out and add the interest, $1,700, which has accrued since you bought, and $5.18 for your ($\frac{1}{2}$) part of the city taxes, and make the note for the amount payable in 90 days from date, as that is the longest time that we can get papers discounted at the banks here. You want to make the note right to me, and I will indorse it, and get it discounted and take up the note which is now on demand. You also want to add the discount to the note, as that has to be paid at the time the note is discounted, and not at its maturity. I would figure the amount that the note should be given for but I have not the figures I sent by Fannie. I will inclose a blank note for you to fill out and sign, also one partially filled out that you may see the form. All well. I will fix the little with you when you come. All hands start for Boston next Monday. Shall be glad to see you when you come. Love to all.

"As ever, Niles.

"Mr. Wood will explain to you about the note if you do not understand. Hope to hear from you as soon as possible.

"N."

That part of the memorandum in Bagley's handwriting is as follows:

"The 440 feet x 128$\frac{1}{2}$ cost $35 per foot.........$15,400
Paid May 9, '87 (Time of purchase), $\frac{1}{2}$.......... 5,134
Due in 9, '88, 1-3.... ....................... 5,133
Due in 9, '89, 1-3........ ...... ............ 5,133

"In 8 per cent semiannual, it has cost you to carry your 1-3 interest to May 9, '88, $210.22, which includes interest, taxes for 1887, examination of abstract, etc. If you let him in on an equality with you he should pay you $\frac{1}{2}$ the above or $105.11. He should make next payment $1,849, and pay you $\frac{1}{2}$ that it cost to carry it to May 9, which $\frac{1}{2}$ is $105.11."

And this is the extract upon which this contention is based.

When this extract is read in connection with the letter in which it was inclosed and in the light of the surrounding circumstances, the contention is found to be wholly untenable.

Morse and Kimball were brothers-in-law and intimate friends. Kimball and Bagley resided in and were doing business in Kansas City. Morse, whose wife had recently returned from a visit to Kimball, resided in a distant State. With Bagley he had no personal acquaintance, and never had had any correspondence or business transactions, and of course could not have then known that any part of the memorandum was in Bagley's handwriting. The agreement between Kimball and Morse was the result of their previous correspondence, in which their minds had met, as is apparent upon the face of this letter. With that agreement or the correspondence that produced it, Bagley had nothing to do, and knew nothing about it, except what he had been told by Kimball, the substance of which was, that Morse was going to assist him pecuniarily in meeting his engagements. The data contained in this memorandum were evidently not furnished as a basis upon which an agreement was to be made, but for the purpose of showing the amount for which a note was to be executed in the performance of an agreement already made. In making the agreement and the payments under it, the evidence all tends to show that Morse relied solely on the representations of his brother-in-law, and the idea of an estoppel founded upon this memorandum, was evidently an afterthought. The court did not err in holding in effect that there was no estoppel in the case.

(3) It is also contended that the court erred in not giving the plaintiff some sort of a judgment against Kimball, and some sort of a decree against Bagley. The only relief sought in the plaintiff's petition against either was a decree of title to an undivided sixth of the real estate and the only ground upon which a right to such a decree was based, was that he had bought an undivided sixth interest in the real estate of Kimball and paid him for it. As it clearly appeared from the evidence

that the declaration of trust was never delivered to the defendant Kimball, and was never by him assigned to the plaintiff Morse, but was held by Bagley to secure the payment to him of the moneys by him advanced to pay Kimball's part of the original purchase money, interest and taxes, and that those advancements to the amount of $3,050 had never been repaid to him, no case was made under the petition for a decree of title against Bagley. Kimball had no title, and no personal judgment was asked against him. So that it is not seen how under the pleadings and evidence, the court could have done more for the plaintiff than charge the amount of his payments amounting to the sum of $3,863.34 upon the one-third interest of Kimball, subject to the prior liens of Bagley, as was done in the decree. Until those prior liens were discharged Bagley was under no obligations to convey title to any one, and the court could not have required him to do so. Finding no error for which the judgment and decree of the circuit court should be reversed, the same is affirmed. All concur.